UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS                                                  NO: 11-234

VINCENT THOMAS                                          SECTION: J(5)

**ORDER AND REASONS**

Before the Court is a *Motion to Vacate Sentence under 28 U.S.C. § 2255* (**Rec. Doc. 101**) filed by Defendant, Vincent Thomas ("Thomas"), an *Opposition* thereto (**Rec. Doc. 105**) by the United States of America ("the Government"), and Thomas's *Reply* (**Rec. Doc. 107**). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

**PROCEDURAL AND FACTUAL BACKGROUND**

On September 20, 2012, Thomas pled guilty to Counts One through Six of the Seven-Count Indictment (Rec. Doc. 5) as well as Count One of a Bill of Information to Establish a Prior Conviction (Rec. Doc. 38), pursuant to a plea agreement (Rec. Doc. 41). Count One of the Indictment charged Thomas with conspiracy to

1

distribute and to possess with the intent to distribute five hundred grams or more of cocaine hydrochloride and twenty-eight grams or more of cocaine base. (Rec. Doc. 5, p. 1). Counts Two through Five charged Thomas with intentional distribution and/or possession with intent to distribute various quantities of cocaine hydrochloride or crack. (Rec. Doc. 5, p. 2-3). Count Six charged Thomas, a previously convicted felon, of possession of a firearm. (Rec. Doc. 5, p. 3). Count Seven charged Thomas with possession of a firearm in furtherance of a drug trafficking crime. (Rec. Doc. 5, p. 3). At his rearraignment, Thomas waived both his right to trial by jury as well as a formal reading of the indictment. Thomas then entered a plea of guilty pursuant to a written *Factual Basis* (Rec. Doc. 42), which he acknowledged, swore to, and signed. The Court accepted Thomas's plea of guilty after Thomas verified under oath the truth of the matters set forth in the *Factual Basis*.

The *Factual Basis* set forth that a government Confidential Source was put into contact with Thomas for the purpose of selling drugs. The Confidential Source, under the direction of government agents, set up a meeting, and on or about January 24, 2008, met with Thomas and three others. At the meeting, Thomas and the three others provided the Confidential Source with

$17,500.00, which she counted and returned. The Confidential Source notified Thomas and the others that the transfer of the cocaine and money would have to occur at another location. While Thomas and the others were in the process of following the Confidential Source to the designated location, agents conducted a traffic stop of Thomas's car and seized $11,500 from Thomas and $6,500 from his associates.

The *Factual Basis* further provided that on November 21, 2010, a Confidential Informant was put in contact with Thomas, who agreed to sell the Confidential Informant two ounces of crack. The Confidential Informant and Thomas then met at Thomas's residence, where Thomas provided the Confidential Informant with two ounces of cocaine powder, because he no longer possessed any crack, in exchange for $2,000.00. Thomas also fronted the Confidential Informant an additional ounce of cocaine powder. Again, on December 1, 2010, under the supervision of DEA agents, the Confidential Informant contacted Thomas to purchase two ounces of crack. The Confidential Informant arrived at Thomas's residence and provided Thomas with $3,000.00, $2,000.00 of which was for two ounces of crack, and $1,000.00 of which was for the ounce of cocaine powder fronted

to him in November 2010. The Confidential Informant then provided the drugs to the DEA agents.

The *Factual Basis* also explained that on September 1, 2011, DEA agents executed a search warrant of Thomas's residence. During the search, agents discovered approximately 28.4 grams of cocaine base, 30.5 grams of cocaine hydrochloride, 40.6 grams of marijuana, and a shotgun manufactured outside of Louisiana. Thomas was then taken into custody.

During plea negotiations and Thomas's rearraignment, Thomas was represented by Roger W. Jordan, Jr. Mr. Jordan withdrew as Thomas's counsel on June 21, 2013, nearly a year after his rearraignment. On June 28, 2013, the Court appointed Federal Public Defender Valerie Welz Jusselin to represent Mr. Jordan at sentencing.

According to the Pre-Sentence Investigation Report, Thomas was subject to a guideline sentence of 120 months imprisonment as the statutory minimum sentence for Counts One and Three. (Rec. Doc. 85, p. 22). The Court sentenced Thomas on January 9, 2014 to a sentence of 120 months of imprisonment and 8 years of supervised release. Thomas timely appealed his sentence *pro se*, which was ultimately dismissed by the Fifth Circuit as frivolous. (Rec. Doc. 99).

## PARTIES' ARGUMENTS

In his motion, Thomas asserts that he was deprived effective assistance of counsel by Mr. Jordan during plea negotiations. Specifically, Thomas alleges that during the time in which Mr. Jordan was representing him, Mr. Jordan was simultaneously representing Thomas's unindicted co-conspirator. Thomas contends that he advised Mr. Jordan of his willingness to cooperate with the Government in prosecuting his co-conspirators in an effort to secure a plea agreement, but that Mr. Jordan delayed in negotiating a plea agreement in an effort to benefit his other client. As a result of this delay, Thomas asserts that he was offered a plea agreement with a proposed sentence that was substantially higher than it would have been if Mr. Jordan had facilitated timely plea negotiations. Thomas specifically contends that if Mr. Jordan had acted timely as requested, Thomas's plea agreement would have been executed prior to the Government's filing of a sentencing enhancement pursuant to 21 U.S.C.A. § 851 for Thomas's prior convictions. As relief, Thomas requests that the Court vacate his current sentence and allow him to "plead guilty to the plea agreement without the inclusion of the § 851 information." (Rec. Doc. 101, p. 20). Thomas also

requests that the Court conduct an evidentiary hearing on the pending motion.

In response, the Government does not specifically dispute that a conflict of interest existed as a result of Mr. Jordan's simultaneous representation of Thomas and Thomas's co-conspirator. However, the Government denies that this conflict adversely affected Mr. Jordan's representation of Thomas. Instead, the Government notes that the record reflects that Mr. Jordan and Thomas took full advantage of the opportunity to cooperate with the Government, which was reflected in the plea agreement offered to Thomas. The Government further contends that the plea agreement reflected the maximum amount of leniency available and was "consistent with routine operating procedures." (Rec. Doc. 105, p. 3). The Government also denies that Thomas would have received a more beneficial plea agreement had Mr. Jordan acted earlier with regards to plea negotiations. Accordingly, the Government contends that a vacation of Thomas's current sentence is not appropriate.

## LEGAL STANDARD & DISCUSSION

As an initial matter, it is important to note that Thomas has used the proper procedural vehicle to assert his arguments for ineffective assistance of counsel. A motion to vacate, set

aside, or correct a sentence pursuant to 28 U.S.C. § 2255 "provides the primary means of collateral attack on a federal sentence," for cognizable errors that occurred "at or prior to sentencing." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citing *Cox v. Warden*, Fed. Det. Ctr., 911 F.2d 1111, 1113 (5th Cir. 1990)). Here, Thomas seeks a vacation or modification of his sentence based on alleged errors of his counsel which occurred during his plea negotiations. Additionally, Thomas's present motion is timely, as it was filed within one year of the date on which his conviction became final. *See* 21 U.S.C. § 2255(f) (2008). As such, the Court will consider the merits of Thomas's arguments regarding ineffective assistance of counsel as contained in his motion.

A counsel's simultaneous representation of multiple defendants may deprive them of their Sixth Amendment right to counsel. *Salts v. Epps*, 676 F.3d 468, 475 (5th Cir. 2012). The Fifth Circuit has specifically recognized that joint representation "may preclude a defense attorney from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution." *Id*. (quoting *Holloway v. Ark.*, 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). However, joint representation is not considered to be "per se

7

violative of constitutional guarantees of effective assistance of counsel," and is permissible under certain circumstances. *Id*. (citing *Holloway*, 435 U.S. at 490; 98 S.Ct. 1173).

The Supreme Court has made clear that in order to obtain post-conviction relief for injury sustained by a counsel's joint representation, a defendant who raised no objection at trial must "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Fifth Circuit has recognized that an "actual conflict of interest exists whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *Nealy v. Cabana*, 782 F.3d 1362, 1364 (5th Cir. 1986) (quoting *U.S. v. Carr*, 740 F.2d 339, 348 (5th Cir. 1984) (internal quotations omitted)). Moreover, a defendant may prove an "adverse effect" by "establish[ing] with evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). The definitions of "actual conflict" and "adverse effect" are fairly vague, so

8

claims based on conflicts of interest from joint representation are "tightly bound to particular facts." *Morin v. Thaler*, 374 F.App'x 545, 552 (5th Cir. 2010) (quoting *Perillo*, 205 F.3d at 782) (internal quotations omitted)).

Because the Government does not specifically dispute that an actual conflict of interest existed with regard to Mr. Jordan's representation of Thomas, the primary issue is whether Thomas has shown that this conflict adversely affected his representation during plea negotiations. Thomas asserts that he was adversely affected by the conflict because Mr. Jordan "failed to actively pursue a plea deal" for Thomas in an effort to prevent hardship to his other client, thereby delaying the execution of a plea agreement. (Rec. Doc. 101, p. 20). Thomas specifically contends that Mr. Jordan advised him to delay in assisting the Government, because he could potentially obtain a plea agreement for a five-year sentence, and should "hold on to [sic] the good information until you get a deal, then you can tell them everything." (Rec. Doc. 101, p. 23). Thomas further alleges that if he had disregarded Mr. Jordan's advice, and if Mr. Jordan had pursued plea negotiations more expeditiously, he could have obtained a five year sentence instead of his present ten-year sentence. Thomas bases this proposition on his

9

understanding that he could have accepted a plea agreement prior to the Government's filing of the Bill of Information to Establish Prior Conviction, which would have resulted in a sentence that did not factor in his previous felony conviction.

However, as noted by the Government, Thomas *did* cooperate with the Government upon Mr. Jordan's advice on two occasions in early to mid-2012. While Thomas does not provide the Court with the exact dates of these meetings, which he describes as "debriefings," he does note that these were conducted prior to September 19, 2012.[1] The Bill of Information to establish Thomas's prior conviction was not filed by the Government until after these two "debriefings" were conducted. Therefore, regardless of when Thomas chose to cooperate, it appears as though the Government was always planning on filing this Bill of Information. Moreover, Thomas cannot point to any evidence, in the record or elsewhere, other than his self-serving conclusory statements to support his proposition that he was entitled to or would have obtained a lesser sentence if Mr. Jordan had taken action to secure a plea agreement at an earlier date. Instead, as noted by the Government, this plea agreement is consistent

---

[1] In his Affidavit, Thomas notes that the "first debriefing" occurred "a few months" after "the early months of 2012." (Rec. Doc. 101, p. 23, ¶6-7). He then says that the "second debriefing" occurred an unidentifiable amount of time later, but prior to his meeting with Mr. Jordan, which occurred on September 19, 2012. (Rec. Doc. 101, p. 24, ¶ 10).

with the standard agreement provided to defendants charged with similar crimes who have similar criminal histories as Thomas.

Because Thomas cannot present sufficient evidence to show that Mr. Jordan's conflict of interest adversely affected his sentence, he is not entitled to relief pursuant to 28 U.S.C. § 2255. Additionally, for the aforementioned reasons, an evidentiary hearing on this matter is unnecessary.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Thomas's *Motion to Vacate* (**Rec. Doc. 101**) is **DENIED**.

**IT IS FURTHER ORDERED** that Thomas's request for an evidentiary hearing is also **DENIED**.

**IT IS FURTHER ORDERED** that Thomas's *Motion for Leave to File Reply* (Rec. Doc. 106) is **DENIED AS MOOT**.

New Orleans, Louisiana this 18th day of August, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE